1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

9

10

11

12

13

| | |
|---|---|
| MAJID M. MOGHADAM,<br><br>                      Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                  Defendant. | NO.  C15-2009-TSZ-JPD<br><br><br>REPORT AND<br>RECOMMENDATION |

14

15

16

17

18

19

      Plaintiff Majid M. Moghadam appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and

1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth

below, the Court recommends that the Commissioner's decision be REVERSED and

REMANDED for further proceedings consistent with this Report and Recommendation.

20

I.      FACTS AND PROCEDURAL HISTORY

21

22

23

      At the time of the administrative hearing, Plaintiff was a 43 year old man with a limited

education.  Administrative Record ("AR") at 26.  Plaintiff is Iranian, speaks Farsi, and is

unable to communicate in English. AR at 18, 26.  His past work experience includes

24

REPORT AND RECOMMENDATION - 1

1    employment as a wedding videographer for twenty-two years in Iran.  AR at 18.  Plaintiff has

2    not worked since he came to the United States in 2008.  AR at 438-39.

3          On January 14, 2011, Plaintiff filed a claim for SSI payments.  Plaintiff asserts that he

4    is disabled due to a history of spinal, ankle and hip problems resulting from a motor vehicle

5    accident.  AR at 16, 19.  Plaintiff also alleges that he has depression, anxiety, and affective

6    disorder.  AR at 16, 20.

7          The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 14.

8    Plaintiff requested a hearing, which took place on March 1, 2014.  AR at 14.  On April 2,

9    2014, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her

10    finding that Plaintiff could perform specific jobs existing in significant numbers in the national

11    economy.  AR at 26-27.  Plaintiff's administrative appeal of the ALJ's decision was denied by

12    the Appeals Council, AR at 5-8, making the ALJ's ruling the "final decision" of the

13    Commissioner as that term is defined by 42 U.S.C. § 405(g).  On December 24, 2015, Plaintiff

14    timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.   JURISDICTION

16          Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

17    405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

19          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

20    social security benefits when the ALJ's findings are based on legal error or not supported by

21    substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

22    Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

23    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

24    *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

REPORT AND RECOMMENDATION - 2

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

1   to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

2   the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

3   then the burden shifts to the Commissioner at step five to show that the claimant can perform

4   other work that exists in significant numbers in the national economy, taking into consideration

5   the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

6   416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

7   to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.      DECISION BELOW

On April 2, 2014, the ALJ issued a decision finding the following:

1.     The claimant has not engaged in substantial gainful activity since January 14, 2011, the application date.

2.     The claimant has the following severe impairments: status-post left ankle, left hip, and spinal fractures secondary to a motor vehicle accident in 2007; degenerative disc disease; affective disorder; and anxiety disorder.

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b).  The claimant can stand and walk for about 6 hours and sit for more than 6 hours, with normal breaks.  The claimant can lift, carry, push, and pull within the light exertional limits.  The claimant can frequently climb ramps and stairs and balance.  The claimant can occasionally climb ladders and scaffolds, as well as stoop, kneel, crouch, and crawl.  The claimant can perform work in which concentrated exposure to hazards is not present.  In order to meet ordinary and reasonable employers' expectations regarding attendance and workplace behavior and production, the claimant can understand, remember, and carry out unskilled, routine, and repetitive work of the kind that varies no more than occasionally from day-to-day.  The claimant can perform work in which public contact is no more than occasional.

5.     The claimant is unable to perform any past relevant work.

6.    The claimant was born on XXXXX, July 23, 1970 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7.    The claimant has a limited education and is able to communicate in English.

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since January 14, 2011, the date the application was filed.

AR at 16-27.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err by failing to consider plaintiff's inability to communicate in English when evaluating his ability to perform other work at step five?

2.    Did the ALJ err in evaluating the opinion of Chi Gan, MD?

3.    Did the ALJ err in evaluating the opinion of Azar Sadeghalvad, MD?

4.    Did the ALJ err in evaluating the opinion of Ronnier Aviles, MD?

5.    Did the ALJ err in evaluating the opinion of Sung Kwon, MD?

6.    Did the ALJ err in evaluating the opinions of of Salim Qassis, PsyD, and mental health clinician Lisa Hake;?

7.    Did the ALJ err in evaluating the opinion James Bailey, PhD?

Dkt. 13 at 1.

//

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1

# VII.   DISCUSSION

2

A.      It is Undisputed that the ALJ Erred at Step Five, and the Error was Harmful

3

As discussed above, at step five of the sequential evaluation process the burden shifts to

4

the Commissioner to demonstrate that the claimant is not disabled and can engage in work that

5

exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v);

6

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The ALJ may

7

meet this burden by asking a vocational expert a hypothetical question based on medical

8

assumptions supported by substantial evidence in the record and reflecting all the claimant's

9

limitations, both physical and mental, supported by the record.  *Hill v. Astrue*, 698 F.3d 1153,

10

1161 (9th Cir. 2012) (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th

11

Cir. 2009)).  However, "if a vocational expert's hypothetical does not reflect all the claimant's

12

limitations, then the expert's testimony has no evidentiary value to support a finding that the

13

claimant can perform jobs in the national economy."  *Matthews v. Shalala*, 10 F.3d 678, 681

14

(9th Cir. 1993).

15

Plaintiff alleges that the ALJ harmfully erred because she was required to consider

16

plaintiff's illiteracy and ability to speak English as a vocational factor.  Dkt. 13 at 2.  Although

17

the ALJ explicitly recognized plaintiff's inability to communicate in English, AR at 26, she did

18

not include any such limitation when posing hypothetical questions to the vocational expert

19

during the hearing.  AR at 439, 450-54.  As a result, the vocational expert's testimony did not

20

address whether illiteracy or inability to communicate in English would preclude employment

21

from the identified occupations.  AR at 450-54.  However, it is undisputed that the Dictionary

22

of Occupational Titles ("DOT") provides the identified occupations require basic ability to

23

read, write, and speak in English.  AR at 450-54.  Plaintiff thus argues the failure to consider

24

his language limitations at step five resulted in apparent conflict between the vocational

expert's testimony and the DOT, which was not resolved.

The Commissioner concedes the ALJ's error at step five regarding plaintiff's inability

to communicate in English and failure to resolve conflict between the vocational expert's

testimony and the DOT.  Dkt. 20 at 1-2.  The Commissioner requests that this case be

remanded under the "ordinary remand rule," so that the ALJ may remedy the error at step five.

*Id.* at 2.  However, the Commissioner argues that all other aspects of the ALJ's decision in this

case are supported by substantial evidence.  Dkt. 23 at 2.

Plaintiff contends that on remand, the ALJ should not be permitted to revisit her finding

that plaintiff is unable to communicate in English and should instead be directed to incorporate

this limitation in any hypothetical question posed to a vocational expert.  Dkt. 21 at 3.  The

Commissioner failed to address how this error should be corrected on remand in either the

initial responsive brief, Dkt. 20, or the supplemental brief, Dkt. 23.[3]  This is particularly

perplexing, as the Court specifically directed that the Commissioner's "responsive brief shall

also address plaintiff's argument that the Court should direct the ALJ not to revisit her finding

that plaintiff is unable to communicate in English, and instead incorporate this limitation in any

hypothetical question posed to a vocational expert."  Dkt. 22 at 3.

Accordingly, the Court interprets the Commissioner's silence as a concession that the

ALJ's finding regarding plaintiff's inability to communicate in English was supported by

substantial evidence and should be affirmed.  On remand, the ALJ shall not revisit her finding

that plaintiff is unable to communicate in English, AR at 26, and this limitation should be

incorporated into the hypothetical questions posed to the vocational expert at step five.

---

[3] The Commissioner did not dispute plaintiff's argument that the ALJ's finding that
plaintiff is unable to communicate in English is supported by substantial evidence.

B.   <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

    *1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

    The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

1    Opinions from non-examining medical sources are to be given less weight than treating

2    or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

3    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

4    evaluate the opinion of a non-examining source and explain the weight given to it.  Social

5    Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

6    more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

7    non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

8    consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

9    957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

10    Plaintiff contends that the ALJ erred in evaluating six medical opinions.  Dkt. 13 at 5-

11    15.  The Commissioner's contends that apart from the one undisputed error by the ALJ at step

12    five, the ALJ reasonably weighed the medical opinion evidence of record and the Court should

13    affirm the ALJ's decision.  Dkt. 23 at 2.

14    2.    *Chi Gan, M.D.*

15    Dr. Gan was plaintiff's treating physician and saw plaintiff approximately 25 times

16    during 2012-2013.  Dkt. 13 at 5 (citing AR 305-47).  Dr. Gan opined that plaintiff was unable

17    to sit for longer than 30 minutes at a time, unable to stand longer than 10 minutes at a time,

18    unable to repetitively bend, and unable to lift weights greater than 10 pounds.  AR at 354.  Dr.

19    Gan concluded that plaintiff could work no more than 10 hours per week and that he was

20    limited to sedentary work.  *Id.*

21    The ALJ accorded "little weight" to Dr. Gan's opinion.  AR at 24.  The ALJ discounted

22    Dr. Gan's opinion for two reasons: (1) Dr. Gan's opinion regarding plaintiff's limitations was

23    "inconsistent with the imaging studies;" and (2) Dr. Gan's opinion was not corroborated by her

24    own treatment notes because her treatment notes repeatedly state that plaintiff does not have

vertebral spine tenderness, paraspinal tenderness, or socroiliac joint tenderness, retains full

motor strength except for some weakness in his quadriceps and hamstrings, and has tenderness

and mild weakness in the left hip.  AR at 24.  Plaintiff argues these were not specific legitimate

reasons for discounting Dr. Gan's opinion regarding plaintiff's pain and the functional

limitations.

The rejection of a physician's opinion due to discrepancy or contradiction between the

opinion and the physician's own notes or observations is "a permissible determination within

the ALJ's province."  *Bayliss*, 427 F.3d at 1216.  However, an ALJ is not permitted to play

doctor.  "'The medical expertise of the Social Security Administration is reflected in

regulations; it is not the birthright of the lawyers who apply them.  Common sense can

mislead; lay intuitions about medical phenomena are often wrong.'" *Taylor v. Colvin,* No. 12-

CV-05599 JRC, 2013 WL 5946052, at *5 (W.D. Wash. Nov. 6, 2013) (quoting *Schmidt v.

Sullivan,* 914 F.2d 117, 118 (7th Cir.1990)).

Here, the ALJ appears to seek objective corroboration of plaintiff's pain through

plaintiff's imaging studies and Dr. Gan's treatment notes.  This is improper.  Pain is a

subjective symptom that cannot be objectively measured or verified.  *Fair v. Bowen,* 885 F.2d

597, 601 (9th Cir. 1998); *see also Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004) (ALJ

erred by effectively requiring objective evidence of fibromyalgia, a pain-inducing disease that

cannot be measured).  The ALJ appears to have formed her own conclusion that the imaging

"reveal[s] only mild to moderate findings in the lumbar spine and mild findings in the left hip,"

and discounted Dr. Gan's opinions – along with the opinions of the other treating and

examining doctors in the record - on this basis.  *See* AR at 24.  For example, the ALJ has not

cited to any treating or examining doctor's opinion that discusses the imaging evidence and

contradicts Dr. Gan's opinion, but instead appears to be relying on her own conclusions about

REPORT AND RECOMMENDATION - 11

1    whether plaintiff's pain complaints are corroborated by the objective imaging evidence.

2    Without a more logical bridge between the imaging evidence and the ALJ's conclusions

3    regarding the severity of plaintiff's pain and limitations, the Court cannot affirm the ALJ's

4    rejection of Dr. Gan's opinion.

5           In addition, the ALJ's reliance on Dr. Gan's treatment records is highly selective.  In

6    addition to the benign clinical findings cited by the ALJ, throughout her treatment of plaintiff

7    Dr. Gan has also noted that plaintiff had decreased flexion and extension of his lower back, had

8    tenderness on palpation of his left hip, and she assessed degeneration of the lumbar or

9    lumbosacral intervertebral disc as well as osteoarthrosis of the pelvic region and thigh.  AR at

10   306, 339, 345.  Dr. Gan noted that plaintiff's back pain was worsened by sitting, lifting objects,

11   or walking.  AR at 307, 309, 334.  Thus, it is not at all clear that Dr. Gan's treatment notes fail

12   to support her opinion that plaintiff is unable to sit for longer than 30 minutes, unable to stand

13   for more than 10 minutes, is unable to repetitively bend, and cannot lift greater than 10 pounds.

14   AR at 354.  An ALJ may not "cherry-pick" from mixed results to support a denial of benefits.

15   *Garrison v. Colvin*, 759 F.3d 995, 1018 n. 23 (9th Cir. 2014) (quoting *Scott v. Astrue*, 647 F.3d

16   734, 739-40 (7th Cir. 2011).  Here, the ALJ made no effort to explain how the findings she

17   listed were inconsistent with Dr. Gan's conclusions.

18          Accordingly, the ALJ failed to provide specific and legitimate reasons supported by

19   substantial evidence for discounting Dr. Gan's opinion.[4]  Because Dr. Gan's opinion contained

20   functional limitations that may have affected the RFC determination, this constitutes reversible

21   error and the ALJ should reevaluate Dr. Gan's opinion on remand.

22          [4] The ALJ did not reject Dr. Gan's opinions as being based on plaintiff's subjective

23   complaints.  The Court therefore declines the Commissioner's invitation to affirm the ALJ's
     decision on this basis, as the Court cannot affirm the decision of an agency on a ground that the
     agency did not invoke in making its decision.  *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th

24   Cir. 2001).

1

    *3.  Azar Sadeghalvad, M.D.*

2

   Dr. Sadeghalvad is another one of plaintiff's treating physicians.  Dr. Sadeghalvad

3

completed a disability evaluation in 2013, and also submitted a follow up letter in 2014.  AR at

4

398-401, 424-25.

5

      a.  2013 Opinion

6

   In December 2013, Dr. Sadeghalvad opined that plaintiff was unable to sit, stand, or

7

walk for more than fifteen minutes at a time, or lift weights greater than 10-15 pounds.  AR at

8

398.  He also noted that plaintiff had limited cognitive function.  *Id.*  Dr. Sadeghalvad

9

concluded that plaintiff was unable to work.  *Id.*

10

   The ALJ gave Dr. Sadeghalvad's opinion "little weight," because (1) there was "no

11

evidence of lumbar sciatica;" (2) imaging studies did not corroborate the degree of limitation

12

opined by Dr. Sadeghalvad; (3) there was no evidence of memory loss; (4) plaintiff's

13

allegations of depression are undermined by his "minimal mental health treatment and

14

medication noncompliance;" (5) this opinion appeared to rely heavily on plaintiff's subjective

15

reports, which are not fully credible; and (6) the degree of limitations opined by Dr.

16

Sadeghalvad did not comport with plaintiff's travel to Iran in 2010/2011 and 2012.  AR at 24.

17

   As discussed above, it was improper for the ALJ to discount medical opinions focusing

18

on plaintiff's pain and related limitations based on a lack of corroboration by objective medical

19

evidence.  *Fair,* 885 F.3d at 61; *Benecke,* 379 F.3d at 594.  Again, the ALJ failed to explain

20

how the imaging failed to corroborate the opined limitations and appears to be making an

21

inappropriate medical conclusion.  *Schmidt,* 914 F.2d at 118.  In addition, as plaintiff points

22

out, Dr. Sadeghalvad found that plaintiff had a positive straight leg raise bilaterally, which is

23

evidence of sciatica.  AR 24, 413; 20 C.F.R. § 404, Subpart P, Appendix 1, § 1.04(A) (positive

24

straight leg raise test is evidence of nerve root compression).  The Commissioner does not

dispute this fact, but merely asserts that "no medical or other source in the record made that connection." Dkt. 23 at 5. Accordingly, the ALJ's conclusion that there was "no evidence of lumbar sciatica" in the record was erroneous, and the ALJ fails to adequately explain how her conclusions, rather than Dr. Sadeghalvad's, are correct. *Reddick,* 157 F. 3d at 725.

The ALJ also stated that there was no evidence of memory loss. AR at 24. However, the ALJ herself concluded that plaintiff's mental status testing demonstrated "mild to moderate deficits in memory." AR at 17. In addition, Dr. Richard Coder, whose opinions the ALJ accorded significant weight, found that plaintiff's working memory was "poor." AR at 261. The ALJ's reasoning thus does not comport with her own findings, nor those of credited medical sources regarding plaintiff's mental limitations. This was not a valid reason to reject Dr. Sadeghalvad's 2013 opinion.

The ALJ also rejected Dr. Sadeghalvad's opinion regarding plaintiff's depression because the ALJ found plaintiff's allegations of depression to be undermined by his limited mental health treatment, and his failure to be compliant with prescribed medications. AR at 24. However, the ALJ's rejection of this diagnosis by Dr. Sadeghalvad is inconsistent with the ALJ's crediting of the opinions of Drs. Coder and Bailey, who both found that plaintiff suffered from major depressive disorder. AR at 16, 260, 277. Although a claimant's failure to comply with medical treatment may, under some circumstances, be a valid reason to reject a claimant's allegations, the law of this Circuit prohibits an ALJ from relying upon a plaintiff's lack of mental health care as a basis for undermining his mental health allegations. "[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"

*Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)).

Similarly, the ALJ could reasonably reject Dr. Sadeghalvad's 2013 opinion if the doctor had relied heavily on plaintiff's subjective reports, which the ALJ found not credible, but the ALJ in this case failed to provide any explanation as to how or why she believed Dr. Sadeghalvad had done so.  AR at 24.  This was inadequate.  *Reddick*, 157 F.3d at 725 (to reject doctor's opinion, ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct") (citation omitted).  Moreover, an ALJ does not provide a specific and legitimate reason to discount a medical opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports [her] ultimate opinion with [her] own observations."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (noting nothing in the record to suggest physician disbelieved claimant's description of symptoms or relied on those descriptions more than his own clinical observations).  Here, Dr. Sadeghalvad did not question the credibility of plaintiff's reports, and his opinion is also supported by his own examinations and observations in his treatment notes.  *See* AR at 411, 413 (physical exam conducted and notes that plaintiff appears "sad, depressed due to condition of his son, talks to me each visit about his concerns of son"); 414 ("This is the second time I see this [patient] and each time I note that his emotional, somatic, and neurogenic pain is not well controlled.").

The ALJ also found that plaintiff's travel to Iran to visit his elderly mother was inconsistent with Dr. Sadeghalvad's opined limitations, stating "I note that the claimant likely had to stand/walk/sit for greater than 15-minute intervals during his international travels to Iran in 2010/2011 and in 2012."  AR at 24.  Plaintiff testified that his symptoms were not as severe during his first trip to Iran, but worsened over time and his burning back pain was very bad

during his second trip.  AR at 443-44.  Specifically, plaintiff testified that he had to get up and walk around the plane frequently, he experienced back pain on the flight, and had to rest by "lying down for three days not able to do anything" once he arrived.  AR at 444.[5]  In light of the ALJ's other errors in evaluating Dr. Sadeghalvad's opinion, the Court is not convinced that, without more, plaintiff's 2011 and 2012 trips to Iran were sufficient to counter the 2013 opinion of his treating doctor regarding his sit/stand/walk limitations and ability to work.  AR at 376, 400. *See also Tackett,* 180 F.3d at 1103 (four day road trip not inconsistent with disability claim, and the ALJ failed to gather enough information regarding this trip to conclude that the trip was substantial evidence to discount medical opinions regarding the claimant's limitations); *Howard v. Heckler,* 782 F.2d 1484, 1488 (9th Cir. 1986) (periodic restricted travel not inconsistent with disability claim and claimant's allegations of debilitating chronic pain).  Although plaintiff may have been willing to endure severe pain to visit his mother on two occasions, these trips do not necessarily evince an ability to endure similar pain on an ongoing basis.

On remand, the ALJ should further develop the record with respect to plaintiff's two trips to Iran if she wishes to rely on those trips as a basis for discounting a treating physician's opinion as to plaintiff's limitations.

### b.     2014 Opinion

The ALJ also gave little weight to Dr. Sadeghalvad's 2014 opinion letter.  AR at 24.  Dr. Sadeghalvad opined that plaintiff is not able to lift more than 8 pounds and should not bend repeatedly or sit, stand, or walk more than 15 minutes at a time.  AR 424.  Dr. Sadeghalvad also opined that plaintiff suffered from major depression affecting his cognitive function, ability to concentrate, and short term memory.  *Id.*

---

[5] Plaintiff testified that during the light "I just keep walking – yeah, I, I walk around, I sit down, I stand up, and once I was there . . . I was resting for three days.  So I was kind of lying down for three days not able to do anything.  So the first time I seem to be okay, the first time I went to Iran, but the second time I was much worse, because the second time I remember my, my whole flight my lower back I had burning in my back."  AR at 444.

1

2      The ALJ discounted this opinion because the "claimant has only mild to moderate findings

3   in the lumbar spine and mild findings in the left hip, cervical/thoracic spine, and left ankle."  AR at

4   24.  Here, the ALJ did not cite any evidence to support this conclusion, although she appears to be

5   referring to plaintiff's imaging evidence.  As discussed above, the ALJ was not permitted to seek

6   objective proof of plaintiff's subjective pain symptoms.  The ALJ fails to explain how the

7   imaging failed to corroborate the opined limitations and appears to be drawing an inappropriate

8   medical conclusion.

9      The ALJ further found that Dr. Sadeghalvad's opinion is inconsistent with other evidence

10  in the record, and also "appears to rely heavily on the claimant's subjective report, which is

11  undermined by his disability conviction."  *Id.*  As discussed above, the ALJ does not supply a

12  specific and legitimate reason to discount a medical opinion "by questioning the credibility of the

13  patient's complaints where the doctor does not discredit those complaints and supports [her]

14  ultimate opinion with [her] own observations."  *Ryan*, 528 F.3d at 1199-1200.  Dr. Sadeghalvad

15  personally observed plaintiff's "sad" and "depressed" moods.  AR at 413, 415.  Although the ALJ

16  stated that she discounted Dr. Sadeghalvad's opinion because he failed to perform mental status

17  testing, AR at 24-25, the ALJ apparently agreed with Dr. Sadeghalvad's conclusion that plaintiff

18  had cognitive limitations because she limited plaintiff to "simple, repetitive work."  AR at 18.

19     Accordingly, the ALJ failed to provide specific and legitimate reasons for rejecting Dr.

20  Sadeghalvad's 2013 and 2014 opinions.  On remand, the ALJ shall reevaluate Dr. Sadeghalvad's

21  opinions without primarily relying on her own interpretation of the imaging evidence to reject this

22  treating physician's opinions.  The ALJ shall provide legally valid reasons for rejecting his

23  opinions, if such a conclusion is warranted.

              4.      *Dr. Ronnier Aviles, M.D.*

24     Plaintiff alleges that the ALJ erred by failing to discuss Dr. Aviles' treatment records.

    Dr. Aviles was a treating physician who performed an exercise stress echocardiogram on

REPORT AND RECOMMENDATION - 17

1    plaintiff in March 2013.  AR at 303.  Dr. Aviles' notes explain that the duration of this test was

2    supposed to be 10-11 minutes on a treadmill, but that plaintiff stopped the test after five

3    minutes due to "orthopedic problems" and shortness of breath.  AR at 303.  Dr. Aviles opined

4    that plaintiff had "severely diminished functional capacity."  *Id.*  The ALJ's decision is silent

5    as to this medical record.  *See* AR 11-27.

6         "The ALJ must consider all medical opinion evidence.  20 C.F.R. § 404.1527(b)."

7    *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  The Commissioner contends that

8    "the ALJ did not reject Dr. Aviles' assessment," but "agreed that Plaintiff had a severely

9    diminished functional capacity and was limited to light work with numerous additional

10   restrictions." Dkt. 23 at 7 (citing AR at 18).

11        The Court declines the Commissioner's invitation to presume, from the ALJ's silence

12   as to the stress echocardiogram results, that the ALJ adopted Dr. Aviles' opinion in full.

13   Moreover, the Court is not in a position to determine whether the stress echocardiogram results

14   were more consistent with the ALJ's limitation to light work, or the opinions of plaintiff's

15   treating and examining physicians that the ALJ rejected.  On remand, the ALJ shall make clear

16   that this evidence was considered, and clarify the weight afforded to the stress echocardiogram

17   results and Dr. Aviles' opinion.

18                        *5.    Dr. Sung Kwon, M.D.*

19        Dr. Kwon, a state agency medical consultant, performed a physical evaluation of

20   plaintiff in August 2010.  AR at 249-55.  Dr. Kwon found plaintiff could stand/walk for two

21   hours, sit for less than two hours and lift/carry less than ten pounds.  AR at 253-54.  Dr. Kwon

22   found that plaintiff exhibited pain behaviors and had limited range of motion in his back, neck,

23   shoulders, hips and ankles as well as spinal tenderness.  *Id.*  For example, Dr. Kwon noted that

24   plaintiff "sits uncomfortably sitting up in the chair with his back straight at all times," and "has

1   a very difficult time walking around the exam room and even from a sitting position to

2   standing position and getting on and off the exam table to a supine position." AR at 251.  Dr.

3   Kwon described plaintiff's "gait [as] abnormal and antalgic and is very slow, requiring the help

4   of his son to support his torso."  AR at 251.

5           The ALJ rejected Dr. Kwon's report because: (1) the ALJ found plaintiff's presentation

6   at the exam was not fully credible; (2) the imaging evidence was not consistent with Dr.

7   Kwon's findings; (3) plaintiff's presentation at Dr. Kwon's evaluation was not consistent with

8   his presentation at other appointments later that same month; and (4) Dr. Kwon did not have an

9   opportunity to review the imaging studies before rendering an opinion.  AR at 22-23.

10          As discussed above, it was improper for the ALJ to discount Dr. Kwon's opinion based

11  on her own suspicions regarding plaintiff's credibility where the examining doctor did not

12  question plaintiff's credibility and supported his assessment with his own clinical findings and

13  observations.  *Ryan,* 582 F.3d at 1199-1200.  As discussed above, Dr. Kwon supported his with

14  numerous observations of plaintiff's lack of mobility in his back, neck, hips, and ankles,

15  positive straight leg testing as well as other observations of plaintiff during the examination.

16  AR at 249-55.  Dr. Kwon also linked the opined limitations to his own observations and

17  clinical findings.  AR at 253-54.  This was not a situation, for example, where the doctor

18  simply parroted plaintiff's subjective statements regarding his symptoms.

19          It was similarly improper for the ALJ to discount Dr. Kwon's opinion, along with the

20  opinions of numerous treating and examining doctors, as "inconsistent" with the ALJ's

21  interpretation of the imaging evidence.  As discussed at length above, the ALJ appears to have

22  rejected these opinions by improperly requiring objective corroboration of plaintiff's pain

23  symptoms.  *Fair,* 885 F.3d at 61; *Benecke,* 379 F.3d at 594.

24

1    Finally, the ALJ erred by rejecting Dr. Kwon's opinion because he had not reviewed

2    plaintiff's imaging prior to evaluating plaintiff.  The ALJ could not use this as a reason to

3    reject Dr. Kwon's opinion, on the one hand, while adopting the opinion of non-examining state

4    agency medical consultant Alfred Scottolini, M.D., who was not even aware that plaintiff had

5    had an MRI, on the other hand.  AR at 23, 273.  In addition, the ALJ assumed that Dr. Kwon's

6    opinion would be different if he had viewed the imaging evidence, which the ALJ single-

7    handedly concluded was "benign."  AR at 23.  To the extent that the ALJ questioned Dr.

8    Kwon's conclusions based on his lack of review of the radiographic imaging, the ALJ should

9    have taken steps to further develop the record rather than simply reject the opinions of treating

10   and examining physicians in this case based upon the ALJ's own interpretation of the imaging

11   evidence.  *See Tonapetyan v. Halter*, 242 F.3d at 1144, 1150 (9th Cir. 2001) ("The ALJ in a

12   social security case has an independent duty to fully and fairly develop the record and to assure

13   that the claimant's interests are considered.") (internal quotation marks and quoted sources

14   omitted) and *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to

15   develop the record further is triggered only when there is ambiguous evidence or when the

16   record is inadequate to allow for proper evaluation of the evidence.").  The ALJ may discharge

17   this duty in several ways, including: subpoenaing the claimant's physicians, submitting

18   questions to the claimant's physicians, continuing the hearing, or keeping the record open after

19   the hearing to allow supplementation of the record. *Tidwell v. Apfel, 161 F.3d 599, 602 (9th*

20   *Cir. 1999); Smolen, 80 F.3d at 1288.*

21   Here, if the ALJ was concerned that the imaging records would have altered Dr.

22   Kwon's conclusions, the ALJ should have developed the record and elicited Dr. Kwon's

23   opinion, rather than speculating to this effect.  Accordingly the ALJ did not supply specific and

24

legitimate reasons supported by substantial evidence for rejecting Dr. Kwon's opinion regarding plaintiff's limitations.

### 6.     Dr. Salim Qassis, PsyD, and Mental Health Clinician Lisa Hake

Dr. Qassis and Ms. Hake completed a mental health evaluation of plaintiff when he began treatment at Sound Mental Health.  AR at 383-95.  They determined plaintiff had marked impairment in social interactions and response to stress and assigned a GAF score of 45.[6]  They also diagnosed plaintiff with major depressive disorder, severe without psychotic features.  AR at 383.

The ALJ erred by failing to discuss this assessment in her written decision.  The Court also declines to consider the Commissioner's post-hoc rationalizations for why the ALJ could have permissibly rejected their opinions.  On remand, the ALJ should address this evidence, and explain the weight afforded to their opinions.

### 7.     Dr. James Bailey, Ph.D

Dr. Bailey is a state agency medical consultant who completed a mental residual functional capacity assessment of plaintiff in October 2010.  AR at 288-90.  Dr. Bailey found that plaintiff was capable of only "superficial" contact with the public and coworkers.  AR at 290.  The ALJ gave this opinion great weight, except she found that plaintiff had no limitations with respect to interaction with coworkers.  AR at 25.  In formulating the RFC, the ALJ limited

---

[6] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range.  Id. at 32.  For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  Id. at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job.  Id.

1    plaintiff to "occasional" contact with the public rather than "superficial" contact with the

2    public.

3            Plaintiff argues that the ALJ erred by conflating the quality and quantity of interaction

4    without explaining the deviation from the medical opinion.  The Commissioner asserts that the

5    word "occasional" means up to two hours per day only in the context of physical exertional

6    levels, and does not carry the same technical connotations in the context of mental limitations.

7    Dkt. 23 at 9.  The Commissioner asserts that, "in the colloquial sense, the word 'occasional'

8    was reasonably consistent with the word 'superficial,' so the ALJ did not fail to account for Dr.

9    Bailey's opinion."  *Id*. at 10.  However, the Commissioner does not cite any authority for

10   distinguishing between the term's use in the context of physical and mental demands.

11           In light of the ALJ's errors in evaluating the other medical opinion evidence, it is

12   unnecessary to determine whether the ALJ also committed harmful error by giving great weight

13   to Dr. Bailey's opinion that plaintiff can have only "superficial" contact with the public, and then

14   formulating an RFC specifying "occasional" interaction with the public.  However, the Court

15   directs the ALJ to clarify this issue on remand.[7]

16

17           [7] Courts in other jurisdictions have also noted the distinction between the quality and
     frequency of social interactions.  *See, e.g., Hill v. Colvin*, 2015 WL 8752361 at * 5 (N.D. Ind.
18   Dec. 14, 2015) (remanding because "the ALJ limited only the Plaintiff's frequency of interactions
     with supervisors and coworkers but did not address the intensity of such interactions").  In
19   addition, the manner in which many ALJs articulate the two limitations does suggest that the
     Commissioner views "occasional" and "superficial" as separate and distinct limitations.  *See, e.g.,*
20   *Bohal v. Astrue*, No. 09-5479, 2010 WL 1740770 at * 5 (W.D. Wash. April 29, 2010) (emphasis
     added) (ALJ gave great weight to opinion that claimant can carry out simple or complex tasks and
21   make judgments in a work setting with occasional interactions with coworkers and supervisors and
     superficial interaction with members of the public); *Harviston v. Colvin*, No. 14-266, 2015 WL
22   4523793 at * 6 (E.D. Wash. July 27, 2015) (emphasis added) (ALJ adopted opinion that claimant is
     limiting claimant's interpersonal exposure to "brief superficial interaction with the public and
23   occasional, superficial interactions with coworkers."); *Mikeals v. Colvin*, No. 13-5902, 2014 WL
     3891348 at * 4 (W.D. Wash. Aug. 7, 2014) (ALJ determined claimant cannot have public contact
24   and only superficial contact with coworkers, finding "superficial means more than none but less
     than occasional.").

REPORT AND RECOMMENDATION - 22

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 4, 2017**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 6, 2017**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 21st day of December, 2016.

_James P. Donohue_

JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 23